[Civ. A. No. 385. Appellate Department, Superior Court, City and County of San Francisco.—August 25, 1933.]

BAY DISTRICT CLAIM SERVICE, LTD. (a Corporation), Respondent, v. HENRY M. JONES, Appellant.

(2 Cal. Supp. 77.)

Manson & Allan for Appellant.

Leon A. Blum for Respondent.

JOHNSON, P. J.—The plaintiff instituted the action as the assignee of Raphael Weill & Company, a corporation operating the department store known as The White House in San Francisco. The defendants, Henry M. Jones and Anna (otherwise known as Zona C.) Jones, are husband and wife, who have been living apart under a separation agreement dated June 16, 1915. In the agreement Mr. Jones agreed to pay his wife for her maintenance and support the sum of $200 a month.

In September, 1931, Mrs. Jones bought a fur coat at The White House for $372.50 on which she paid $104, leaving unpaid at the time of suit $268.50. At about the same time certain other articles of clothing were purchased on credit for which there was owing $37.50. The goods purchased were all charged to Mrs. Jones personally.

In the year 1931, and particularly at the time of the purchases, Mr. Jones was not fully complying with the agreement to pay his wife $200 a month; and in December, 1931, Mrs. Jones instituted an action against her husband to recover the amount of $2,975 in arrears, together with accrued interest, and obtained a judgment by default for $3,460.03. On March 29, 1932, after that judgment was entered. Mr. and Mrs. Jones made a new or supplemental agreement modifying their original agreement and among other things providing for satisfaction of said judgment. This later agreement was, however, almost immediately repudiated by Mrs. Jones, and nothing was received by her under it. Her judgment also remained unpaid.

In the present action the trial court gave judgment in favor of plaintiff against the defendant Henry M. Jones for $306, the full amount of the claim; and said defendant has appealed from that judgment.

The question presented is whether a husband is liable for necessaries furnished to his wife, when the two are living apart under a separation agreement, wherein the

husband covenants to make stipulated payments to the wife for her support, but fails of compliance with his stipulation.

Section 175 of the Civil Code provides: "nor is he liable for her support when she is living separate from him, by agreement, unless such support is stipulated in the agreement".

The appellant contends that when such an agreement exists between husband and wife, then, irrespective of whether the stipulated payments are made or not, a person supplying necessaries to the wife on credit may not recover therefor from the husband, but the remedy is an action by the wife herself to enforce the delinquent payments under the separation agreement.

The question is a new one in this state, but in our research we have found a few precedents in other jurisdictions. The earliest reported case dealing with a similar situation is *Nurse* v. *Craig*, 2 Bos. & P. (N. R.) 148, decided in 1806. In that case various decisions are cited wherein it had been held that if the separate maintenance was regularly paid, the husband was exempt from liability for the wife's debts. Such would certainly be the effect of the language of section 175 of our Civil Code; but if the husband defaults in his payments, then the ground for the exemption fails. In the case cited, Justice Heath reasons as follows (pp. 156–158):

"As to the principle, it is the duty of the husband to provide necessaries for the wife. The question is, whether he discharges that duty merely by entering into a covenant with a trustee for payment of an allowance? If he refuse to perform the covenant, the wife may be starved before redress can be obtained. The common law does not relieve any man from an obligation on the mere ground of an agreement to do something else in its place, unless that agreement be performed. Accord without satisfaction is no plea . . . The agreement could have no operation in destroying the husband's liability by transferring the credit to the wife, unless accompanied by payment; she cannot be in a worse condition than if she cohabited with her husband . . . But if such a covenant as this, without payment, be sufficient to exempt the husband from his liability, it would have

the same effect as a general prohibition. At common law the wife may have resource to any friend for necessaries if the husband refuse her, and the husband is bound to pay for them; for when the law imposes a duty, it raises a promise on the part of the person upon whom it is imposed to discharge it. . . . To suppose that a woman who is parted from her husband under an agreement for a separate maintenance is not by law entitled to charge her husband with payment of her necessaries, when he withholds the stipulated allowance, shocks my humanity and revolts my reason.''

On the authority of *Nurse* v. *Craig, supra,* it was held in 1829 in *Hunt* v. *De Blaquiere,* 5 Bing. 550, that where husband and wife were separated by a divorce *a mensa et thoro* for the husband's fault, with an order for alimony in favor of the wife, the husband was liable for necessaries furnished to the wife in case the alimony were not paid. As was there said ''it is not the decree or the deed that discharges the husband, but the observance of it''.

And in *Johnston* v. *Sumner,* 3 Hurl. & N. 261, 268; Pollock, Chief Baron, in 1858, said that where the husband did not pay the allowance, ''it was not unreasonable to imply that he meant, if he did not pay it, his wife might pledge his credit''.

See, also, *Beale* v. *Arabin,* 36 L. T. (N. S.) 249, decided in 1877.

The question first arose in this country for consideration in 1811 in New York in *Baker* v. *Barney,* 8 Johns. 72 [5 Am. Dec. 326], where the husband and wife had parted by consent, with a promise on the part of the husband to provide money for the wife's maintenance. There being no proof that the allowance was punctually paid, the court, following the rule applied in *Nurse* v. *Craig, supra,* held the husband liable for the necessaries supplied to the wife after the separation, saying ''if the husband was from that time to be discharged from responsibility for necessaries, the wife might be left to subsist on charity''.

So in *Fredd* v. *Eves,* 4 Harr. (Del.) 385, 387, the rule was laid down in Delaware in 1846 in these words:

''Where husband and wife separated by their mutual agreement, and live apart by mutual consent, the husband is still liable for necessaries supplied to the wife, unless

he has provided for her an allowance for necessaries suitable to his pecuniary means and condition in life, and regularly pays such allowance. If he has not provided such allowance, or does not pay it regularly, he is not discharged from the liability which the law imposes on him of supporting his wife." See, also, *Kemp* v. *Downham*, 5 Harr. (Del.) 417, 418.

And at about the same time, in *Brown* v. *Brown*, 5 Gill (30 Md.), 249, the court, speaking of a separation deed and citing *Nurse* v. *Craig* and *Baker* v. *Barney*, *supra*, said (p. 254) : "This deed, so long as the terms of it are complied with on the part of the husband, exonerates him from the obligation to support his wife, and is a protection against any claim which can be made upon him for supplying her even with necessities."

The latest case which we find is *McKinney* v. *Guhman*, 38 Mo. App. 344, decided in 1889, where the rule is very clearly enunciated in the following language (p. 347) :

"Where there has been a mutual separation between husband and wife, two things are necessary to relieve the husband from the payment of debts contracted by the wife for necessaries : First. The husband must make an allowance to his wife for her support, and the amount must be reasonably sufficient to furnish the wife with necessaries. The word 'necessaries' would include board, washing, suitable clothing and medical attendance. Second. The allowance must be regularly paid. The mere agreement of the husband to pay the allowance does not relieve him of his legal obligations; nothing short of actual performance will suffice."

When section 175 of the Civil Code was amended in 1874 by the addition of the clause relieving the husband of obligation to support the wife, if living apart from him by agreement, unless such support is stipulated in the agreement, it is to be presumed that the amendment was made with cognizance of the previous adjudications on the subject, and with no intention of exempting the husband from liability for the wife's necessaries by a mere promise without fulfillment. As was said by Justice Heath in *Nurse* v. *Craig*, *supra*: "The law does not relieve a man from obligation on the mere ground of the agreement to do something else in its place, unless that agreement be performed."

The husband's stipulation may legally be interpreted, therefore, as carrying with it his implied consent that the wife may supply her needs at his expense, if his money is not forthcoming to her as agreed.

Some question is raised by the appellant as to the sufficiency of proof that the station in life of the parties justified the purchase of the fur coat in question. Both the original and the supplemental agreement between Mr. and Mrs. Jones were introduced in evidence; and from the terms of the later document dated March 29, 1932, even if the original agreement is left out of consideration, we think the trial court could readily draw the inference that, as fashions go nowadays, Mr. Jones' means and condition in life were such as to justify his wife in providing herself with a fur coat of the character purchased. The judgment is affirmed.

Conlan, J., and Goodell, J., concurred.